SAMUEL WALKER, PLAINTIFF IN ERROR, V. PATRICK
HAGERTY, DEFENDANT IN ERROR.

1. **Attachment:** CAUSES FOR. To justify a party in causing an attachment to issue against the property of a debtor, at least one of the causes of attachment mentioned in the statute must exist.

2. ———: ———. Mere insolvency of the debtor, even if it exist, is not a cause of attachment.

3. ———: EVIDENCE. On the testimony in the record; *Held*, That the attachment was properly dissolved.

ERROR to the district court for Holt county. Tried below before TIFFANY, J.

*Thomas O'Day*, for plaintiff in error.

*H. M. Uttley*, and *Thurston & Hall*, for defendant in error.

MAXWELL, CH. J.

In August, 1885, the plaintiff brought an action in the district court of Holt county against the defendant, upon a promissory note, to recover the sum of $3,942.37, with interest at ten per cent from August 1st, 1885, and caused an attachment to issue in said action upon the following grounds:

"1st. The defendant is about to convert his property into money for the purpose of placing it beyond the reach of his creditors, and

"2d. Has property and rights in actions which he conceals, and

"3d. Has disposed and conveyed a part of his property with intent to defraud his creditors, and

"4th. "Has assigned part of his property, with intent to defraud his creditors, and

" 5th. Is about to assign and dispose of a part of his property with intent to defraud his creditors."

On the 1st day of September, 1885, the defendant filed motion to dissolve the attachment, and as grounds therefor claimed that the " facts stated in affidavit for attachment are not true, and for other irregularities in the attachment."

Defendant also filed his affidavit with motion denying grounds of attachment stated in affidavit. On the nineteenth day of February, 1886, the court ruled thereon, and ordered that the attachment heretofore granted be dissolved and discharged, to which plaintiff excepted.

The note in question was given to A. N. Schuster & Co., of St. Joseph, Mo., and by them transferred after it became due to the plaintiff, as stated by the plaintiff in his affidavit, " for reasons of business convenience."

The defendant has made the following payments on said note, viz :

| | |
|---|---:|
| June 23d, 1883............................$ | 500 |
| July 12th, 1883 ............................ | 800 |
| September 1st, 1883........................... | 500 |
| October 16th, 1883 ........................... | 500 |
| May 31st, 1884 ............................ | 400 |
| June 21st, 1884............................... | 25 |
| Total......................................$ | 2725 |

Leaving a balance due of $3942.37. The plaintiff, it appears, is the cashier of the banking firm of Schuster, Hax & Co., of St. Joseph, Mo., and went to O'Neill in August, 1885, and called upon the defendant, who refused either to pay or secure the note. The defendant, it appears, claimed that he was entitled to certain off-sets, which he alleges Schuster & Company had agreed to allow him, and he seems to have supposed that the note was transferred to the plaintiff by them to avoid compliance with their agreement. This, in fact, does not seem to have

been the purpose of that firm. It is evident, however, that the defendant supposed that an attempt was being made to obtain an advantage over him.

The affidavit of one Thomas Carlon shows this to be the fact. The affidavit is as follows:

" I am the attorney for the above-named defendant, and was present at the conversation mentioned in the affidavit of Thomas O'Day, filed herein, as having taken place between O'Day and Hagerty. I had previously told Mr. Hagerty that the note was subject to any defense he might have against Schuster & Co., the payees of the note; that he was entitled to credit thereon for any damages he had sustained at the hands of said Schuster & Co., and for all set-offs and claims he had against said firm. This advice was based on facts stated to me by Mr. Hagerty. Mr. Hagerty was very indignant at the treatment he was receiving at the hands of said firm, in not being allowed the credits on said note which he claimed was due him, and said substantially that he would fight it through, and would make all the defense he could to the note, and they should not have a dollar of his money not justly due; that if he was allowed proper credits on said note, he would settle at said time. Mr. Hagerty was very indignant; his statements were confined to a denunciation of plaintiff's conduct, and his determination to resist the imposition and defend himself. Have known Mr. Hagerty, defendant, for three years and a half; all I have seen of him has been upright; his reputation has been, and still is, exceptionally good."

Thomas Golden also swears that he heard the conversation referred to above. " I heard Hagerty express himself as being very indignant at the conduct of Walker, and that he was determined to fight him; but it is not true that Hagerty said anything intimating that he had his property where the law could not reach it."

Benjamin Gallagher also swears: "I was present at the

time O'Day came in, and heard all of the conversations at both of the times, in Mr. Hagerty's store, named in said O'Day's affidavit, filed herein; at no time during that con-versation did Mr. Hagerty express any intention of escap-ing legal liability. Mr. Hagerty told Mr. O'Day that he did not owe the amount claimed; that Walker's claim was fraudulent, and rather than pay such an unjust and wrong-ful claim, he would prefer to see the property burn; but that he, Hagerty, would pay everything and all that was justly due on said claim, which he then and there offered to do. He did not at any time 'insinuate,' by word or ac-tion, that he had his property where the law could not reach it, nor that he could beat an execution, or anything equivalent thereto. Mr. Hagerty was rather indignant, and when threatened with suits, met it pretty defiantly, but all his remarks were to the effect that the claim was frau-dulent, and could not be brought into judgment. Any statements to the contrary are a perversion of the testi-mony, and incorrect."

The testimony tends to show that the defendant was in-debted to various persons named in about the sum of $19,-000, in addition to the amount of the plaintiff's claim; that his assets at that time amounted to at least $27,000. The uniform testimony of the men with whom he had been dealing, except the plaintiff and those in his interest is, that the defendant had conducted his business in such a manner as to indicate an intention to pay his debts; and there is absolutely no evidence showing the transfer or con-cealment of property by him for the purpose of defrauding his creditors.

To authorize an attachment at least one of the causes men-tioned in the statute must exist. Code, § 198. Mere insol-vency, even if it had existed in this case, is not a ground of attachment. A man may be unable to pay his debts in full and still be doing all in his power to pay them, and so long as he furnishes no statutory cause of attachment against

him, no attachment will lie against his property. Neither will denials of the validity of the claim sued upon, and a determination to fight it, furnish cause to attach the defendant's property. The rule might be different, however, if such expressions were accompanied with acts constituting a cause of attachment. As we do not find sufficient cause in the record for the attachment it is evident that the judgment is right and must be affirmed.

JUDGMENT ACCORDINGLY.

The other judges concur.